ALLGOOD *v.* UNITED GAS CORPORATION.

In Banc. Oct. 11, 1948.

(37 So. (2d) 12).

**B. D. Statham,** for appellant.

Watkins & Eager, for appellee.

**McGehee, J.**

In this case the jury was peremptorily instructed by the trial court to render a verdict in favor of the defendant, United Gas Corporation, upon the theory that the unsuitable appliance furnished by it to the plaintiff, Vernon E. Allgood, for use in the performance of his work as an employee was neither the sole nor a concurring proximate cause of the personal injury complained of. We are of the opinion that under the facts and circumstances disclosed by the proof there was presented an issue for the determination of the jury as to whether or not this failure of the master was at least a concurring proximate cause of the injury to its servant; and also whether or not the master had exercised reasonable care to furnish a reasonably safe and suitable appliance, if the jury should find that the failure so to do was a concurrent proximate cause of such injury. A failure here to furnish a suitable appliance, as shown by the undisputed evidence, meant that the master had furnished an unsafe appliance, for the purpose for which it was being used, owing to the nature of the work in which the servant was engaged at the time he was injured.

A recovery of damages was sought both on the ground of an alleged failure on the part of the master to use rea-

sonable care to furnish the servant a reasonably safe place in which to work and because of its failure to furnish him a safe and suitable appliance or instrumentality with which to do his work.

We do not think that the proof offered was sufficient to establish that the defendant was guilty of negligence under the first ground above mentioned, since it was not shown with sufficient clearness that the presence of the object in the pathway of the servant on which he stepped, slipped and fell was known to the master or that it had been there for a sufficient time for it to have been discovered by the exercise of reasonable care.

On the second ground complained of the undisputed proof is that the servant was badly burned and permanently injured thereby while attempting, at the express direction of the master, to go to the edge of a "manhole," which was four or five feet deep and almost of equal diameter, and to carry with him a one-gallon "molasses" can, then being used as a tar-bucket, on which there was neither a bail nor handle, and which was "almost full" of a boiling mixture of asphalt and tar to be presently used by the foreman in sealing the pipe joints where the gas mains and service line connected in the manhole.

In carrying out this command of the foreman the servant was required to either go over a pile of dirt which had been excavated from the manhole, or get to the said manhole by first stepping down into the service ditch where it connected with the same, and in the center of which service ditch the service pipe had been laid and was filled over with dirt except for a short space near the edge of the manhole. He undertook to reach the manhole via the service ditch as the most suitable means of access thereto. At least he was doing so in the immediate presence of the foreman and under his supervision.

The service ditch at the point above mentioned was from 14 to 18 inches deep and was about "a shovel and

one-half'' wide. Owing to the location of the service pipe in the center thereof, it was necessary for the plaintiff to place his foot on one side of the service pipe as a means of approach to the edge of the manhole. When he did this he stepped on a fruit jar which he did not know was at the bottom of this narrow ditch, whereupon his foot slipped from under him, and he, the molasses can of boiling mixture, the caving dirt, and all went down into the manhole, when the said can was overturned and this boiling or molten liquid came out on his arm.

The molasses can had a smooth edge at the top thereof, which the plaintiff was then holding with his gloved hand after placing his thumb on the outside and his fingers on the inside of it at a place where a piece of tar paper had been folded by him over the rim of the can from the top to keep it from burning his hand through the glove. The outside of the can was as usual covered by this tar and asphalt substance which would run down on the sides thereof.

It is argued for the appellee that when the servant fell the liquid would have poured onto his arm, where it was burned both below and above the elbow, even if the can had been equipped with a bail, or even if he had been using a container with a ladle-like handle, instead of this molasses can, for the purpose of carrying the liquid to the edge of the manhole, or that at least it would be a mere matter of conjecture or speculation as to whether the servant could have avoided injury to himself if the appliance being used had been a suitable one.

We are unable to agree with the above stated contention of the appellee for the reason that in our opinion the jury could have reasonably concluded from the testimony that the plaintiff either had to let go the bucket as he fell because of the fact that he could not hold it securely with his thumb and fingers on the smooth edge of the can while falling, on account of the weight of its contents, or the jury could have believed from a preponderance of the evidence, as a reasonable probability, that

he could have avoided overturning the can during the fall and pouring its contents on his arm if he had been holding it by a bail or had been using the kind of tar bucket with a handle, or a ladle-like container, which the testimony of two witnesses, experienced in the same type of work, shows was customarily used for the purpose, as being reasonably necessary to enable the workman to avoid getting burned.

The testimony of the two witnesses above referred to was to the effect that in their experience in this type of work of carrying a boiling substance for use in sealing pipe joints, a tar-bucket was used which had a cover extending about one-half or three-fourths of the area over the top of the bucket, and that it either had handles or was fashioned like a ladle with which the bucket could be held away from a person's body. The unsuitability of the instrumentality furnished to the plaintiff in the case at bar is not debatable, and complaint had been made by him to the foreman in regard to the danger incident to its use, and without avail.

Since the servant had ample room while falling into the manhole to have pushed or thrown a properly equipped bucket or ladle-like boiler away from his body, or to avoid overturning the liquid on him, we are of the opinion that it was for the jury to say whether or not as a reasonable probability the negligence of the master in failing to furnish the servant a suitable appliance was still operating at the time he fell and constituted a contributing cause of the injury complained of.

As against the granting of a peremptory instruction, either for the plaintiff or defendant, it is well settled that the Court should consider as established every material fact which the evidence tends to prove, directly or by reasonable inference, against the party asking for such instruction. Stricklin v. Harvey, 181 Miss. 606, 179 So. 345, and the numerous cases therein cited.

██ It is true that the fall may have been an independent intervening event, without the happening of which the servant may not have been injured, but the fact remains that he was not injured by the fall into the manhole but by the overturning of the contents of the molasses can on him while falling, and it was therefore a question of fact as to whether or not the servant could have protected himself from being burned if he had not been holding this heavy can of boiling tar in the awkward and cramped position in which he necessarily had to carry it in his hand while stepping down into the narrow service ditch, and also whether or not he would, as a reasonable probability, have seen and avoided stepping on the fruit jar, which caused him to fall, except for the fact that his attention was directed to trying to hold the can as carefully as he could in this awkward position.

In the familiar case of Cumberland Telephone & Telegraph Co. v. Woodham, 99 Miss. 318, 54 So. 890, 891, where the telephone company was negligent in permitting its telephone line, which extended from across the street into the subscriber's residence, to fall and come in contact with a power line, and the subscriber was killed as a direct and proximate result of the power company turning its current back on, the Telephone and Telegraph Company was held liable on the ground that its negligence contributed to the accident, and the court announced the principles of law as to such liability which are, in our opinion, controlling in the case at bar:

"Without attempting to define proximate cause in such terms as will be applicable to all states of fact—for to do so is practically impossible—it will be sufficient to say that the negligent act of a person, resulting in injury, is the proximate cause thereof, and creates liability therefor, when the act is of such character that, by the usual course of events, some injury, not necessarily the particular injury, or injury received in the particular manner complained of, would result therefrom, provided the attendant circumstances are such that an

ordinarily prudent man ought reasonably to have antici-
pated that some injury would probably result from the
act done. In order that a person may be liable for dam-
ages resulting from his negligence, it is not necessary
that his negligence should have been the sole cause of the
injury. His negligence may be the proximate cause,
where it concurs with one or more causes in producing
an injury, and, although the author or authors of such
cause or causes may also be liable therefor. 29 Cyc. 492-
496, inclusive, and authorities there cited. 'If a defend-
ant is negligent, and his negligence combines with that
of another, or with any other independent intervening
cause, he is liable, although his negligence was not the
sole negligence, or the sole proximate cause, and al-
though his negligence, without such other independent
intervening cause, would not have produced the injury.'
Susie B. Harrison v. Kansas City Elec. Light Co., 195 Mo.
606, 93 S. W. 951, 7 L. R. A., N. S., 293.''

It is true that the negligence of the defendant must be
such that ''without it the result would not have oc-
curred''; and that the numerous authorities cited by the
appellee sustain this view. But after all, the ques-
tion of whether or not the accident would have occurred
without the negligence complained of is one of fact for
the determination of a jury in all cases where men of fair
intelligence and sound judgment, as jurors are supposed
to be under the directory provisions of our jury laws, may
reasonably disagree as to whether or not a negligent act
is a concurrent cause of the injury. We think that such
is the case now before us and that the granting of the
peremptory instruction complained of was error, as here-
inbefore stated.

Reversed and remanded.

**Montgomery, J.** (specially concurring).

It is true, as stated in the dissenting opinion (Alex-
ander, J.) that ''Injury does not, of itself, imply liability,

nor danger negligence; nor yet does causal connection establish, of itself, legally proximate cause. Reasonable foreseeability remains the only just and dependable test."

On the evidence here the unsuitability of the instrumentality furnished the plaintiff is not disputed and complaint had been made by plaintiff, without avail, to the foreman in regard to the danger incident to its use.

As against the granting of a peremptory instruction, the majority opinion, in my judgment, correctly states that it is well settled that the court should consider every material fact which the evidence tends to prove, directly or by reasonable inference, against the party asking for such instruction, citing Stricklin v. Harvey, 181 Miss. 606, 179 So. 345.

In my judgment the jury could reasonably infer from the evidence here that because of the awkward manner in which the plaintiff was required to carry this unsafe and unsuitable instrumentality filled with boiling tar, the plaintiff's attention was necessarily focused upon the bucket of tar in his hand to the practical exclusion of any observation of where he was going and that this focus of attention, proximately caused by the unsafe instrumentality, was the cause of his slipping and falling and the consequent spilling of the tar on plaintiff's arm. The jury could also reasonably infer that such a result of the furnishing of this unsuitable and unsafe appliance should have been reasonably foreseeable by defendant as a probable result of its negligence.

The question of whether the furnishing by the master of this unsafe and unsuitable instrumentality did cause plaintiff to so focus his attention upon it as to distract his attention from looking where he placed his feet in the service ditch and whether by reason of this distraction plaintiff was caused to fall and the boiling tar was caused to spill upon his arm and injure him and whether this injury would probably not have occurred if a suitable and safe appliance had been furnished him, and whether

all of this was reasonably foreseeable to the master as a probable result of his negligence, all of these questions, it seems to me, are questions of fact to be determined by the jury.

For the foregoing reasons, I specially concur in the majority opinion.

**Griffith, C. J.** (dissenting).

The efficient force which put in motion the brief course of events resulting in the injury was the plaintiff's fall; but the court has correctly held that the defendant is not liable on account of the fall. It must be shown by the plaintiff, therefore, and by a preponderance of substantial evidence that the negligence of the defendant in furnishing an unsuitable and therefore an unsafe appliance combined or concurred with the fall in such a manner that without the factor of the unsafe can, the injury, as a matter of probability, would not have happened. In other words, he must show that as a probability, notwithstanding the fall, he would not have been injured had he been furnished with a can with a bail or a handle.

It is easy, of course, to show that the injury might not have happened had the plaintiff been furnished with a can with a bail or handle, but to prove what might or might not have happened is not enough to make out a case, as we have many times held. The majority say that the plaintiff has made a case when he shows as reasonable probability that he "could have avoided overturning the can"; but this, again, is to submit a possibility, when the test is *would* he as a probability have avoided, etc.

In the extremely short time that intervened between the fall and the actual injury, we can entertain at best only the conclusion that he might have avoided the injury; but there is nothing in such a situation by which it may be dependably or cogently said out of the almost instantaneous transpiration of events that the plaintiff

would, as a matter of probability, have avoided the injury had he had a can with a bail or handle. Therefore, I am of the opinion that a jury should not be permitted to transmute into a probability that which in the nature of the situation can disclose nothing more than a possibility.

**Alexander, J.** (dissenting).

I am unable to bring myself into accord with the conclusions of the Court.

Let it be assumed, but not conceded, that the can furnished to plaintiff was unreasonably unsafe, the controlling opinion, by denying liability of defendant with respect to the cause of his falling, confines the employer's liability to the failure to furnish an instrumentality that was not reasonably safe. Wherefore, the injury must have been reasonably foreseeable, not as a result of the fall, but of the defects or dangers in the container. Had plaintiff suffered injury because of the burning of his fingers from the heated can, or its contents, due to the absence of a bail or handle, a different case would be presented.

Yet, under this record, the defendant, if liable, must be charged with violation of a duty reasonably to foresee that 1) the servant would fall, 2) that the hot mixture would spill, 3) and spill upon plaintiff, 4) because of the absence of a handle. If the master was not charged, as we hold, with responsibility for the tripping of the servant, the chain of proximate cause and resultant responsibility is severed at its initial link.

It ought not to be held that this tripping was reasonably foreseeable. We have, throughout the history of our jurisprudence, held to the principle that liability is predictable only of reasonably foreseeable harm. Recently we held in Roberts v. Mississippi Power & Light Co., 193 Miss. 627, 10 So. (2d) 542, 543, "The measure of prudence which is an element of the definition (of rea-

sonable care) must in turn involve reasonable probabilities according to normal human experience. Such probability in turn involves not an absolute prescience but a degree of foreseeability which consists with normal experience and observation . . ." Most recently, we reaffirmed our former holding in Danciger Oil & Refining Company v. Free, Miss., 35 So. (2d) 542, 544, that "Courts in civil cases act upon reasonable probabilities. In trials under the common law, to prove a possibility only, or to leave the issue to surmise or conjecture, is never sufficient to sustain a verdict." In that case, there was negligence by the master in furnishing a faulty appliance. Yet, a verdict for the servant was set aside upon the ground that the act of the servant, which was a link in the casual chain, was the immediate cause of the injury, and we reiterated the established principle that "proof, without more, than a certain event transpired as a result of a stated condition, is proof only of the possibility and does not establish the probability."

Injury does not, of itself, imply liability, nor danger negligence; nor yet does causal connection establish, of itself, legally proximate cause. Reasonable foreseeability remains the only just and dependable test. Pollock, Torts, 9th Ed., 32; Salmond, Law of Torts, 6th Ed., 131; Prosser on Torts, page 341; Holmes, The Common Law, p. 56.

Had the container been of an unreasonable weight, the probability of injury from bodily strain, or even from falling, might have been reasonably foreseeable. Yet, we are allowing a jury to speculate upon the mere possibility that the fall—which of itself imposed no liability—would not have resulted in burns if the servant had used a different device. Patently the injury was caused by the fall. The absence of a handle on the partly filled one-gallon can could, at most, have been a factor solely in the extent or nature of the injury.

We have lately held that "the master is not liable where the place or instrumentality becomes or remains

unsafe because of a breach of duty on the part of the injured servant.'' Wilkie v. West Const. Company of Tennessee, 196 Miss. 233, 16 So. (2d) 154, 155, 617. The fall was a breach only of the duty the servant owed to himself.

For emphasis, it is repeated that a reversal of the judgment of the learned trial judge means that a jury must be allowed to find that the master was under a duty reasonably to foresee that the servant would carelessly trip and fall, and that he would be burned by the contents of the little can as a direct and reasonably foreseeable result of the absence of a handle, *and would not otherwise have suffered harm.*

I am of the view that such a fragile chain of causation falls short of reaching the area of the master's responsibility, and attains only to the field of speculation and conjecture, into which the jury should be denied the right to range.